(No. 22329.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* McKINLEY BURR, Plaintiff in Error.

*Opinion filed April 21, 1934—Rehearing denied June 12, 1934.*

FRANCIS HEISLER, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, J. ALBERT WOLL, and HENRY E. SEYFARTH, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error, McKinley Burr, was convicted in the criminal court of Cook county of the crime of robbing one Wilson McKissack while armed with a gun. A trial was had before the court without a jury.

Counsel for Burr contends that the evidence does not support the finding of guilty, and that the trial court erred in refusing to consider affidavits filed in support of the motion to vacate the judgment and grant a new trial on the ground of newly discovered evidence.

McKissack, the complaining witness, testified that at about fifteen minutes after midnight on June 28, 1933, he was sitting on a bench in a shelter house in Washington Park, in the city of Chicago, and a man approached him from the rear and as he came in front of him pointed a gun at him and took from him a pocket-book and $2.25 in money. He then fired two shots past the witness, and the latter ran to the South Park police station and reported the robbery and with two officers returned to the park in a car. There they met officer Ryan and another man, who were talking, and witness later went to the Bridewell Hospital, where he identified Burr. He states that there were other people sitting near where this robbery occurred; that Ryan stated that they thought they had the man that committed the crime; that he had been wounded and taken to the Bridewell Hospital. One Wesley Burks testified that he was in Washington Park and that he saw Burr running, with some officers after him. The officers were shooting into the ground. He stated that Burr had something in his hand swinging, and that the officers said he had a gun and threw it into the woods. Witness states he did not see him throw any gun into the woods and that he did not know whether it was a piece of paper or a gun that he had in his hand, and that he went over to the station house afterwards and saw Burr and thought he was the man the officers were chasing.

Officer Ryan testified that he and his partner were in Washington Park on the night of June 28 and shortly after midnight heard two shots fired; that they saw Burr running; that they threw a flashlight on him and commanded him to stop; that he had a revolver in his hand; that they chased him about two blocks, and that he turned around, and witness thought he was going to fire and fired one shot at him. He testified that they chased Burr about a block further and caught him and locked him up; that he did not have a gun on him when he was caught, and that they had not been able to find a gun though they searched the shrubbery there that morning. Asked if he had seen Burr throw the gun away, witness replied that he saw him "make an indication like as if he looked into the shrubbery." He stated that he asked Burr why he had run, and the latter told him he ran from white people—that he thought they were going to beat him up. Ryan also testified that he met the complaining witness with two other officers when he was taking Burr to the police station and complaining witness described the man that held him up, and witness replied, "We have just arrested a man similar to that and he is over to the Bridewell Hospital now," and that a day or two later he took complaining witness to the hospital to identify Burr. Testimony concerning the identification of Burr by the complaining witness shows that the latter was taken to the Bridewell Hospital and allowed to go into a room containing four persons, and that he came out after having identified plaintiff in error, Burr. Burr is a colored man. The evidence does not show whether all the men in the room at the Bridewell Hospital were colored or whether any other colored person was in that room at that time.

Burr testified that his work was selling papers; that he had gone into the park that night about 11:00 o'clock and lay down to rest; that he heard someone coming along in the bushes, and that he got up and started to walk across in front of some other people when he saw two persons

coming out of the bushes; that he did not know they were police officers as they were dressed in detective clothes, and that one of them shot him and they took him to jail. He also testified that when they arrested him they told him to give them the gun, and that he told them he had no gun but he had some papers and they could take those, and that they searched him and found fifty-four cents and a key in his pocket. There is no evidence that the purse or money belonging to complaining witness was found in his possession or elsewhere. Witnesses were called who testified to his good reputation as a law-abiding citizen.

On motion to vacate the order denying the motion in arrest of judgment affidavits were presented concerning newly discovered evidence. The court permitted the filing of them but refused to hear them read or to hear counsel concerning them.

The principal contention of plaintiff in error in this case centers around the evidence concerning his identification. The complaining witness identified plaintiff in error after having seen him at the hospital. There is in the record, however, evidence which tends to weaken the identification made by the complaining witness. We have referred to the fact that it does not appear whether at the time Burr was first identified by complaining witness he was the only colored man in the Bridewell Hospital room. The robbery occurred shortly after midnight on June 28 in a shelter house in Washington Park. There is no evidence as to whether lights were burning at or near the scene of the robbery. Complaining witness testified that it was light there; that the robber was about on him and had his pistol in his hand when he saw him; that he put his hand in the witness' pocket and took his pocket-book and money, and that he fired two shots and the witness ran and did not know which way the robber went. Officer Ryan testified to seeing Burr run past him and called him to halt. He states first that Burr was running toward the place where the

shots were fired, and later testified that when he first saw him he was running away from the scene of the shots. The only positive testimony that Burr had a gun is that of Ryan, the officer who shot him but who testified that Burr had no gun when he arrested him and that he was unable to find a gun. It is conceded, of course, that Burr was the one chased and captured by the officers, but whether he was the robber is by no means so clear. As we have stated, there is no evidence that the purse and money taken from the complaining witness were found in Burr's possession or in the neighborhood, nor is there any direct evidence that he was seen to throw anything away. Witness Burks, who apparently had equal opportunity with the officers to see him, testified that he had something in his hand and that he did not see him throw anything away. These facts, together with the inconsistent statements of Ryan, first that Burr was in the hospital when he, Ryan, met complaining witness, and later that he met complaining witness when he was taking Burr to the station, tend to cast doubt on the identification of Burr as the guilty person.

While this court will not set aside a finding of guilty unless it feels that there is reasonable doubt as to the guilt of the defendant, we are unable to escape the conviction that there is here a reasonable doubt as to the identification of plaintiff in error. This fact, together with the fact that the trial court refused to read or hear the affidavits concerning newly discovered evidence, compels us to grant a new trial in this case.

In this view of the record it is unnecessary to consider other errors assigned.

For the reasons here indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*